**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-11358

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

MARIO MARTINEZ WILLIAMS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:24-cr-80114-AMC-1

_____

Before LUCK, LAGOA, and MARCUS, Circuit Judges.

PER CURIAM:

Mario Williams appeals his conviction for being a felon in possession of a firearm, arguing that the district court erred in denying his motion to dismiss his indictment because: (1) 18 U.S.C.

§ 922(g)(1) is unconstitutional under the Second Amendment, as applied to him, under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024); (2) our decision in *United States v. Dubois* (*Dubois II*), 139 F.4th 887 (11th Cir. 2025), *cert. denied*, 2026 WL 135685 (U.S. Jan. 20, 2026) (No. 25-6281), is inconsistent with our earlier ruling in *NRA v. Bondi*, 133 F.4th 1108 (11th Cir. 2025) (en banc), *petition for cert. filed*, 2025 WL 1458530 (U.S. May 20, 2025) (No. 24-1185); and (3) under the prior-panel-precedent rule, *Bondi* controls and his constitutional challenge to § 922(g)(1) must be considered under *Bruen/Rahimi*'s framework. The government has moved for summary affirmance. After careful review, we grant the government's motion and summarily affirm.

Summary disposition is appropriate either where time is of the essence, including "situations where important public policy issues are involved or those where rights delayed are rights denied," or where "the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case, or where . . . the appeal is frivolous." *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969).[1] We generally review challenges to the constitutionality of a statute de novo. *United States v. Gruezo*, 66 F.4th 1284, 1292 (11th Cir. 2023).

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The federal felon-in-possession statute prohibits anyone who has been convicted of "a crime punishable by imprisonment for a term exceeding one year" from "possess[ing] in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1).

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that the District of Columbia's total ban on handgun possession, including possession in the home, violated the Second Amendment. *Id.* at 574–76, 628, 635. The Supreme Court stated that the Second Amendment right to bear arms presumptively "belongs to all Americans," but is not unlimited. *Id.* at 581, 626. The Supreme Court noted in *Heller* that while it "[did] not undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment, nothing in [the *Heller*] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* Courts of appeals adopted a "two-step" framework for assessing Second Amendment challenges following *Heller*: (1) determine whether the law in question regulates activity within the scope of the right to bear arms based on its original historical meaning; and (2) if so, apply means-end scrutiny to test the law's validity. *Bruen*, 597 U.S. at 18–19.

In *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010), decided between *Heller* and *Bruen*, we relied on *Heller* in holding that § 922(g)(1) did not violate the Second Amendment, "even if a felon

possesses a firearm purely for self-defense." *Id*. at 770.  Our decision did not rely on means-end scrutiny to conclude that § 922(g)(1) was constitutional; instead, we recognized that prohibiting felons from possessing firearms was a "presumptively lawful longstanding prohibition." *Id*. at 771 (citation modified).  We highlighted "that 'nothing in [*Heller*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons'" or "suggest[] that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment." *Id*. (quoting *Heller*, 554 U.S. at 626–27).  We concluded that Rozier's purpose for possessing a firearm, and the fact that the firearm was constrained to his home, was immaterial because felons as a class could be excluded from firearm possession. *Id*.

In *Bruen*, the Supreme Court reversed the dismissal of a civil suit under 42 U.S.C. § 1983 brought by applicants who had been denied unrestricted licenses to carry a handgun in public that challenged New York regulations requiring all citizens to demonstrate "proper cause" to obtain concealed carry licenses as violating their Second and Fourteenth Amendment rights.  *See* 597 U.S. at 8–16, 31.  The Supreme Court reasoned that reliance on means-end analysis in the Second Amendment context was inconsistent with "*Heller*'s methodology [that] centered on constitutional text and history." *Id*. at 16–24.  The Supreme Court announced the appropriate standard for Second Amendment analysis: (1) "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct"; and (2) if the

conduct is presumptively protected, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 17. The Supreme Court in *Bruen*, quoting *Heller*, referenced the Second Amendment rights of "law-abiding, responsible citizens." *Id.* at 26, 38 n.9, 70 (quoting *Heller*, 554 U.S. at 636).

In *Rahimi*, decided in June 2024, the Supreme Court held that § 922(g)(8), which prohibits the possession of firearms by individuals subject to a domestic violence restraining order, did not facially violate the Second Amendment because regulations prohibiting individuals who pose a credible threat of harm to others from misusing firearms are part of our country's historical tradition. 602 U.S. at 690–92, 699–700. The Supreme Court noted that courts had "misunderstood" the *Bruen* methodology and stated that the Second Amendment permitted not just regulations identical to those in existence in 1791, but also those regulations that are "consistent with the principles that underpin our regulatory tradition" and are "relevantly similar to laws that our tradition is understood to permit." *Id.* at 691–92 (citation modified). The Supreme Court noted that the right to bear arms "was never thought to sweep indiscriminately" and extensively detailed the historical tradition of firearm regulations, including the prohibition of classes of individuals from firearm ownership. *Id.* at 691, 693–98. It again noted that prohibitions on felons' possession of firearms are "presumptively lawful." *Id.* at 699 (citation modified). It also explained that "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id.*

at 700.  The Supreme Court held that § 922(g)(8) was constitutional as applied to Rahimi because the restraining order to which Rahimi was subject included a finding that he posed "a credible threat to the physical safety" of another, and the government provided "ample evidence" that the Second Amendment permitted "the disarmament of individuals who pose a credible threat to the physical safety of others."  *Id.* at 689, 693 (citation modified).

Meanwhile, in *United States v. Dubois (Dubois I)*, 94 F.4th 1284, 1291–93 (11th Cir. 2024), *vacated*, 145 S. Ct. 1041 (2025) (mem.), *reinstated*, *Dubois II*, 139 F.4th at 889, which was first decided before *Rahimi*, we had rejected a defendant's Second Amendment challenge to § 922(g)(1) on the grounds that *Bruen* did not abrogate *Rozier*, which relied on *Heller*, so we remained bound by *Rozier*.  *Id.* at 1291–93.  The Supreme Court then vacated and remanded *Dubois I* for reconsideration in light of *Rahimi*.  145 S. Ct. at 1041.

While *Dubois I*'s remand was pending, we issued an en banc decision in *Bondi*, ruling that Florida's law prohibiting the purchase of firearms by minors was not unconstitutional under the Second Amendment as applied to individuals between the ages of eighteen and twenty-one because it was consistent with our nation's historical tradition of firearm regulation.  133 F.4th at 1111, 1117–30.  In doing so, we cited *Rahimi* and *Bruen* to explain that "[w]hen a person challenges a law regulating arms-bearing conduct, courts must examine the historical tradition of firearm regulation in our nation to delineate the contours of the right."  *Id.* at 1114 (citation

modified).  We did not discuss § 922(g)(1) or *Dubois I* in *Bondi*.  *See generally id.*

On the Supreme Court's remand of *Dubois I*, we concluded that *Rahimi* did not abrogate our "holding in *Rozier* that section 922(g)(1) is constitutional under the Second Amendment" and reinstated our previous opinion.  *Dubois II*, 139 F.4th at 889.  As we explained, "*Rahimi* continued to rely on *Heller*" and "*Rahimi* also did not abrogate *Rozier*."  *Id.* at 892–93.  We concluded that we would "require clearer instruction from the Supreme Court before we may reconsider the constitutionality of section 922(g)(1)," so *Rozier* continued to bind us.  *Id.* at 894.  The majority's decision in *Dubois II* did not cite or discuss *Bondi*.  *See id.*

In *Florida Commissioner of Agriculture v. Attorney General*, 148 F.4th 1307 (11th Cir. 2025), we concluded that the district court erred in concluding that two medical marijuana users had failed to state a claim in their as-applied Second Amendment challenge to 18 U.S.C. § 922(d)(3) and (g)(3), which prohibit "unlawful users" of controlled substances from being sold or possessing firearms.  *Id.* at 1311, 1321 (citation modified).  At *Bruen*'s first step, we concluded that the plaintiffs' "conduct of attempting to purchase and possess firearms for self-defense purposes is clearly covered by the Second Amendment's plain text" and that, "while there is a history and tradition in this Nation of disarming convicted felons, nothing in the [complaint] indicates that [the plaintiffs] have ever been convicted of any crime" or had committed any crime beyond a misdemeanor.  *Id.* at 1317.  At *Bruen*'s second step, we similarly found

that the government "ha[d] not pointed to any historical tradition of disarming those engaged in misdemeanant conduct," that the plaintiffs had never been convicted of a felony, and that the plaintiffs could not be considered dangerous people solely due to their use of medical marijuana. *Id.* at 1318–19. Significantly, we noted that the government "very well may prove at a later stage of litigation . . . that Appellants can fairly be considered relevantly similar to felons . . . who can categorically be disarmed." *Id.* at 1321 n.16 (citation modified). We cited *Dubois II* only in summarizing the government's argument that the plaintiffs' conduct was akin to felons, who have historically been excluded from the right to bear arms. *Id.* at 1317.

Under our prior-panel-precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this [C]ourt sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (citation modified). "To overrule or abrogate a prior panel's decision, the subsequent Supreme Court or en banc decision must be clearly on point and must actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) (citation modified). Abrogation requires the subsequent decision to "demolish and eviscerate all the fundamental props of the prior-panel precedent." *United States v. Lightsey*, 120 F.4th 851, 860 (11th Cir. 2024) (citation modified).

We've "categorically rejected an overlooked reason or argument exception to the prior-panel-precedent rule." *United States v. Jackson*, 55 F.4th 846, 853 (11th Cir. 2022) (citation modified). We've recognized that "questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Id.* (citation modified). Regardless, we've stressed that a panel may not disregard precedent and, thus, that the prior-panel-precedent rule applies, even if a later panel believes it was wrongly decided. *United States v. Golden*, 854 F.3d 1256, 1257 (11th Cir. 2017) (per curiam) (citing *Smith v. GTE Corp.*, 236 F.3d 1292, 1303 (11th Cir. 2001) (rejecting an exception to the prior-panel precedent rule "based upon a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time")).

Here, we grant the government's motion for summary affirmance because its position is clearly right as a matter of law such that there can be no substantial question as to the outcome of the case. *See Groendyke Transp., Inc.*, 406 F.2d at 1161–62. The government is clearly correct as a matter of law that our binding precedent in *Rozier* and *Dubois II* forecloses Williams's Second Amendment challenge to § 922(g)(1). Williams's attempt to disregard these precedents based on a purported conflict between them and *Bondi* is unavailing because *Bondi* did not involve a challenge to a felon disarmament statute, did not suggest that *Rozier*'s analysis of § 922(g)(1) was inconsistent with *Bruen* and *Rahimi*, and did not demolish and eviscerate *Rozier*'s fundamental props. Accordingly, we grant the government's motion for summary affirmance.

10                          Opinion of the Court                    25-11358

**AFFIRMED.**